UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

NEWFREY, LLC,
and
EMHART TECKNOLOGIES,
LLC,

       Plaintiffs,

                                      Case No. 07-13029

-vs-                                    Hon: AVERN COHN

BURNEX CORPORATION,

       Defendant.

_____/

**MEMORANDUM AND ORDER
DENYING DEFENDANT'S RULE 12(b)(1) MOTION
FOR DISMISSAL OF EMHART TEKNOLOGIES LLC
FOR LACK OF STANDING (DOC. 53)[1]**

### I. INTRODUCTION

    This is a patent case. Plaintiffs Newfrey, LLC (Newfrey) and Emhart

Teknologies, LLC (Emhart) complain that defendant Burnex Corp. (Burnex) has

infringed three patents for fasteners for which Newfrey is assignee and Emhart is

licensee. The patents-in-suit are United States Patent Nos. 6,928,705, Low Insertion

Effort U-Base Retainer (the '705 patent); 7,096,638, Low Insertion Effort U-Base

Retainer (the '638 patent); and 7,120,971, Low Insertion Effort U-Base Retainer (the

'971 patent). Before the Court is Burnex's (corrected) motion to dismiss Emhart as a

plaintiff for lack of standing under Rule 12(b)(1). Burnex says that Emhart is a "bare

_____

      [1] The Court originally scheduled this matter for hearing. Upon review of the
parties' papers, however, the Court finds that oral argument is not necessary. See E.D.
Mich. LR 7.1(e)(2).

licensee" without standing to join Newfrey as co-plaintiff in a patent suit.  Emhart says it

is an "exclusive licensee" with standing.  For the reasons that follow, the motion is

DENIED.

## II.  THE LICENSING AGREEMENT

In response to Burnex's motion, Emhart produced under seal an agreement

(Agreement) between Emhart, Inc., as Licensor, and Emhart Teknologies, Inc.,[2] as

Licensee, both organized and existing under the laws of Delaware, by which, according

to its terms, the Agreement is to be construed.  The Agreement reads in relevant part:

> 1.1   "Products" shall mean and include all goods and services which are
> to be manufactured, sold and/or provided by the Licensee pursuant
> to this Agreement and in accordance with the licenses herein
> granted by the Licensor to the Licensee.
>
> 1.2   "Patents" shall mean and include all United States patents and
> patent applications, issued or filed, which pertain to or cover the
> Products, and which the Licensor shall own or control as of the
> effective date of this Agreement, or which the Licensor may obtain
> or otherwise acquire at any time over the duration of this
> Agreement.  A list of said Patents as of the effective date of this
> Agreement is provided in Schedule One-Patents, attached hereto
> and incorporated herein.  Schedule One-Patents shall be updated
> from time to time.
> . . . .
>
> 2.1   For the duration of the Agreement the Licensor hereby grants to the
> Licensee the sole right and license, including the right to sublicense
> others, to make, have made for it, use, and/or sell Products in
> accordance with the Patents.

The patents that are the subject of the Agreement are not identified within the four

corners of the document by number or subject matter and no Schedule One is attached

---

[2] Newfrey LLC is the successor in interest to Emhart, Inc., and Emhart
Teknologies LCC is the successor to Emhart Teknologies, Inc.

2

to the copy of the Agreement submitted to the Court.

### III.  STANDARD OF REVIEW

A Fed. R. Civ. P. 12(b)(1) motion seeks dismissal for a court's lack of subject matter jurisdiction.  A challenge to a party's standing to bring suit is a challenge to the Court's jurisdiction.  In re Carter, 553 F.3d 979, 984 (6th Cir. 2009).  Article III of the United States Constitution requires that a party allege an injury in fact to have standing to bring suit in federal court.  Davis v. Fed. Election Comm'n, 128 S.Ct. 2759, 2768 (2008); In re Carter, 553 F.3d at 984.  The "irreducible constitutional minimum" for standing has three elements: an injury in fact, a causal connection between the injury and the conduct complained of, and a likelihood beyond speculation that the injury will be redressed by a favorable decision.  Lujan v. Defenders of Wildlife, 504 U.S. 555, 560–61 (1992).

### IV.  ANALYSIS

Burnex says the Agreement is "irrelevant" to Emhart's standing as it shows no relationship to the patents in suit and fails to identify the patents.  However, this fact is not necessarily fatal to Emhart's standing as the Agreement could be found to imply the patents at issue under Delaware contract law.  See Ortho Pharm. Corp. v. Genetics Institute, Inc., 52 F.3d 1026, 1033 (Fed. Cir. 1995) (patent implied though unspecified by the licensing agreement under California law).  Neither party has briefed the issue under Delaware law.

Assuming the Agreement were found to imply one or more of the patents at issue,  the next step would be to determine whether paragraph 2.1 establishes that Emhart is an exclusive licensee, or the "beneficial owner of some identifiable part of the

3

patentee's bundle of rights to exclude others," as opposed to a "bare" licensee whom

the licensor merely covenants not to sue.  See id. at 1032.

> The patentee or his assigns may, by instrument in writing, assign, grant,
> and convey, either (1) the whole patent . . . ; or (2) an undivided part or
> share of that exclusive right; or (3) the exclusive right under the patent
> within and throughout a specified part of the United States.  A transfer of
> either of these three kinds of interests is an assignment, properly
> speaking, and vests in the assignee a title in so much of the patent itself,
> with a right to sue infringers.  In the second case, jointly with the assignor.
> In the first and third cases, in the name of the assignee alone.  Any
> assignment or transfer, short of one of these, is a mere license, giving the
> licensee no title in the patent, and no right to sue at law in his own name
> for an infringement. . . . WHETHER A TRANSFER OF A PARTICULAR
> RIGHT OR interest under a patent is an assignment or a license does not
> depend upon the name by which it calls itself, but upon the legal effect of
> its provisions.  For instance, a grant of an exclusive right to make, use,
> and vend two patented machines within a certain district is an assignment,
> and gives the grantee the right to sue in his own name for an infringement
> within the district, because the right, although limited to making, using, and
> vending two machines, excludes all other persons, even the patentee,
> from making, using, or vending like machines within the district.

Waterman v. Mackenzie, 138 U.S. 252, 255–56 (1891) (citations omitted).

Burnex, focusing entirely on the adjective "sole" in paragraph 2.1 of the

Agreement and arguing that it does not mean exclusive, asserts that a sole license is

one where the licensor reserves to itself rights to the patent.  Even if some courts have

used the term "sole license" to refer to the situation in which a licensor happens to have

issued only one license as opposed to agreeing to limit itself to the one license, e.g.,

Kalman v. Berlyn Corp., 914 F.2d 1473, 1481–82 (Fed. Cir. 1990), this does not mean

that is the only possible meaning of the term "sole."  To quote another of Burnex's

cases, Overman Cushion Tire Co. v. Goodyear Tire & Rubber Co., 59 F.2d 998, 999 (2d

Cir. 1932) (emphasis added), "A sole licensee is not *necessarily* an exclusive licensee";

this means the two terms are not necessarily mutually exclusive.  As the Waterman

4

court said, it is not the name but the legal effect of the provisions that counts.  138 U.S. at 256.  "[I]t is the licensee's beneficial ownership of a right to prevent others from making, using or selling the patented technology that provides the foundation for co-plaintiff standing, not simply that the word 'exclusive' may or may not appear in the license."  Ortho, 52 F.3d at 1032.  This, again, is a matter of contract interpretation—and, without making a finding, the Court observes that the use of "sole" in the context of "sole right and license" in paragraph 2.1 appears at least as supportive, if not more, of Emhart's position that the Agreement is an exclusive license as of Burnex's position that it is not.

Moreover, Burnex admits that even a sole licensee under its limited definition may be allowed to participate in a patent infringement action.  "When the sole licensee . . . has been shown to be directly damaged by an infringer in a two supplier market, and when the nexus between the sole licensee and the patentee is so clearly defined as here, the sole licensee must be recognized as the real party in interest."  Kalman, 914 F.2d at 1482.  Burnex says these elements have not been alleged in the complaint or the response.  But the Kalman court, while "not giv[ing] any licensee who joins the patentee standing," id. at 1481, did not hold that the circumstances of that case were the only ones under which a sole licensee may be found to have standing.  Burnex also ignores the immediately preceding paragraph in the decision, in which the court recalls a case in which a sole distributor, who would appear to have fewer rights than the sole licensee defined in paragraph 2.1 of the Agreement, had standing to sue for infringement:

We stated that the jury in Weinar "need not have determined that

Gypsum was 'an exclusive licensee' as defined by [the defendant]."
Weinar v. Rollform Inc., 744 F.2d 797, 807 (Fed. Cir. 1984).  We noted
that it was only necessary for the jury "to believe the testimony that an oral
contract existed between Weinar and Gypsum, under which Gypsum had
an exclusive right to sell as sole distributor in the United States."  Id.
Hence, we held that an exclusive vendor of a product under a patent could
be a co-plaintiff in an action for patent infringement.

Id.

Finally, the circularity of definitions for "Patents" and "Products" to which Burnex

points in the Agreement does not merit a granting of the motion but is a matter for

contract interpretation, and the fact that, according to Burnex, Emhart has produced

"none of the documents to be generated under the license regarding royalties, sales,

and infringements" is a discovery matter to be worked out between the parties.

## V.  CONCLUSION

For the reasons above, Burnex's motion to dismiss Emhart as a plaintiff has been

denied.


SO ORDERED.

        s/Avern Cohn_____
        AVERN COHN
        UNITED STATES DISTRICT JUDGE


Dated:  July 20, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, July 20, 2009, by electronic and/or ordinary mail.

        s/LaShawn R. Saulsberry_____
        Case Manager, (313) 234-5160